UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Christopher A. Jones,<br><br>        Plaintiff<br><br>v.<br><br>Perry Russell,<br><br>        Defendant | Case No. 2:22-cv-00123-CDS-DJA<br><br>**Order Denying Defendant's Motion for Summary Judgment**<br><br>[ECF No. 33] |

      Plaintiff Christopher A. Jones, who was formerly incarcerated in the custody of the Nevada Department of Corrections (NDOC), brought this § 1983 action against former Warden Perry Russell and the NDOC for events that took place while he was incarcerated at the Northern Nevada Correctional Center (NNCC). Compl., ECF No. 5. After screening the complaint, I determined that Jones' only cognizable claim was one Eighth Amendment claim of deliberate indifference to conditions of confinement against Warden Russell for freezing cell temperatures, and as a result, the NDOC was terminated from the action. Screening order, ECF No. 4 at 6. Russell moves for summary judgment. ECF No. 33. Jones opposes the motion. ECF No. 48. Russell failed to reply. Because Russell has not demonstrated that the record supports summary judgment, I deny his motion.

**I.    Background**

      Jones alleges that in November 2020, he was moved to unit 4, cell 14, which is an end cell with two external, broken, and leaking windows, and that he remained there until April 2021. Compl., ECF No. 5 at 3–5. Unit 4 did not have a working heating unit. *Id.* at 6. Jones discussed the heating issue with Assistant NDOC Director Brian E. Williams in late November 2020. *Id.* at 7. Jones heard Williams ask his NNCC escort whether Warden Russell was aware of the problem, and the escorting officer responded in the affirmative. *Id.* at 8. However, the heat was

not repaired during the coldest months of 2021 (including April) even though Jones alleges that numerous inmates, including himself, complained and several correctional officers put in work orders. *Id*. at 8–9. Inmates who were formerly held in unit 4 testified that the heating equipment was still out of service in February 2023. Davison Dep., Def.'s Ex. C, ECF No. 33-3 at 10; Hall Dep., Def.'s Ex. B, ECF No. 33-2 at 9–10.

      As a result of the lack of heat, Jones was subjected to extreme cold, which was exacerbated by the cold that entered his cell through the cracked windows. Compl., ECF No. 5 at 10. Jones explains that the average temperature in Carson City, Nevada from November 2020 to January 2021 fluctuated between 24.4 and 39.7 degrees Fahrenheit. *Id*. at 5. Jones further explains that he "could see [his] exhaled breath inside of the cell" at times and his hands would ache, making it difficult to write. *Id*. at 11. Jones wore a jacket, knitted cap, and gloves in an attempt to stay warm, but these were inadequate. *Id*. at 6. Based on these allegations, Jones alleges that Warden Russell "refus[ed] to exercise his duty to have maintenance perfect repairs on the heating unit that supplied heat to [his] cell" even though Warden Russell was on notice of the heating equipment failure. *Id*. at 3. Mark Hall, who worked maintenance while incarcerated, testified that instead of fixing the heating unit, officials opted to give inmates in unit 4 extra blankets. Hall Dep., Def.'s Ex. B, ECF No. 33-2 at 7. As an additional remedy, inmates were allowed to prop their cell door open during the day to let heat from the hallway into their cells. *Id*.; Davison Dep., Def.'s Ex. C, ECF No. 33-3 at 8. However, inmates had to close their cell doors at night, cutting off any warm air from entering. Hall Dep., Def.'s Ex. B, ECF No. 33-2 at 8.

      Like Jones, Davison also made complaints about the cold temperatures in unit 4. Davison Dep., Def.'s Ex. C, ECF No. 33-3 at 8. Davison stated that "it was freezing cold in [unit 4] all winter[,]" and specifically, that Jones' cell "physically was colder than others" because cold air entered the cell through broken windows and an adjacent, cracked, emergency door. *Id*. at 10,

12–13. Jones did not file a grievance with NDOC regarding the temperature of his cell during the winter months. *See* Jones Grievance History, Def.'s Ex. A, ECF No. 33-1.

## II.  Legal standard

Summary judgment is appropriate when the pleadings and admissible evidence "show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). The court's ability to grant summary judgment on certain issues or elements is inherent in Federal Rule of Civil Procedure (FRCP) 56. *See* FRCP 56(a). "By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). A fact is material if it could affect the outcome of the case. *Id.* at 249. At the summary-judgment stage, the court must view all facts and draw all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). The movant need only defeat one element of a claim to garner summary judgment on it because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 322.

## III.  Discussion

Warden Russell argues he is entitled to summary judgment because (1) Jones cannot show that Russell was deliberately indifferent; (2) Russell is entitled to qualified immunity; and (3) sovereign immunity precludes Jones' tort claim in federal court. ECF No. 33 at 4–11.

### A.  Deliberate indifference

A defendant is liable under § 1983 "only upon a showing of personal participation by the defendant." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A prison official violates the Eighth Amendment when acting with deliberate indifference to serious threats to an inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a

plaintiff must satisfy both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement and to "ensure that inmates receive adequate food, clothing, shelter, and medical care, and [] 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 834 (quoting *Hudson* v. *Palmer*, 468 U.S. 517, 526–527 (1984)). It further "guarantees adequate heating." *Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998). As such, "prisoners have a right to protection from extreme cold." *Micenheimer v. Soto*, 2013 WL 5217467, at *5 (C.D. Cal. Sept. 16, 2013) (quoting *Dixon v. Godinez*, 114 F.3d 640, 642 (7th Cir. 1997)). "Whether an inmate's exposure to cold temperatures constitutes an Eighth Amendment violation depends on the severity of the cold, the duration of the prisoner's exposure, the presence of an alternative means to warmth (i.e., a blanket or jacket), the efficacy of that alternative, and the presence of 'other uncomfortable conditions[.]'" *Miller v. Sanchez*, 2020 WL 528010, at *8 (C.D. Cal. Feb. 3, 2020) (quoting *Micenheimer*, 2013 WL 5217467, at *5.

Here, Russell attempts to narrow the scope of Jones' complaint, arguing that Jones only alleges Russell failed to repair the heating unit during the relevant time-period. ECF No. 33 at 7. I disagree with this assertion. The complaint is broader, alleging that Russell was aware of the problem and failed to take adequate corrective action. Based on the allegations, Jones was forced to endure an unheated cell for approximately five months in the winter and early spring in Northern Nevada when outside temperatures were below freezing, especially at night. And although Jones had alternative means of warmth by way of a jacket, hat, and gloves, Jones alleges that those alternative means were far from sufficient.

*Farmer* instructs that a prison official can be liable under the Eighth Amendment for denying an inmate human conditions of conferment if the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." 511 U.S. at 837. Here, based on the Russell's own exhibits, summary judgment is not appropriate because there is a clear issue of material fact as to whether the heat was working and whether Warden Russell disregarded the freezing conditions of Jones' cell. Russell argues that "Jones cannot show that Defendant Russell was deliberately indifferent to repairing the heating unit, because the record shows the heat was working." ECF No. 33 at 8. But in the very next paragraph, Russell argues that he should not be liable because prison maintenance could not fix the heating unit. *Id*. How can the record support both that the heating unit was working, and that the broken heating unit was irreparable? Russell used Hall's deposition to support its claim that the heating unit was irreparable. *Id*. (citing Hall Dep., Def.'s Ex. B, ECF No. 33-2 at 7). Hall did state that the heating unit was not fixed because maintenance informed him that the heating unit could not be fixed. Hall Dep., Def.'s Ex. B, ECF No. 33-2 at 9. However, Hall's discussion of maintenance was given in the context of Warden Russell's statement to Jones; Hall stated that Russell informed Jones—in response to Jones' complaint about the lack of heat—that maintenance was aware of the heating issue and was working on it. *Id*. Hall further stated that maintenance had issued a bid to have the unit removed and replaced but later cancelled that bid and the heating unit had yet to be fixed. *Id*. at 10. The court notes that according to the record, the heating unit was still not fixed by at least December of 2023—two years later. *Id*. at 11 ("[T]hey still haven't got it fixed. They put it out to bid, and now it's been canceled. And the gentlemen that are living in there now still do not have heat."); *see also* Davison Dep., Def.'s Ex. C, ECF No. 33-3 at 10 ("I was a resident in that unit until February of 2023, and the heat was never fixed. Even still to this day—I was just down there last winter, and it was still freezing cold. It was still not fixed."). Furthermore, Davison testified that he witnessed

5

Jones complain to Warden Russell about the heat on at least two occasions, and that the only remedy was blankets. Davison Dep., Def.'s Ex. C, ECF No. 33-3 at 8. And Russell concedes that the record demonstrates that there were 12 work orders regarding unit 4 heating issues. ECF No. 33 at 8 (citing Work Orders from 11/1/20 to 4/30/21, Def.'s Ex. G, ECF No. 33-7).

The argument "Russell was not directly responsible for having any necessary repairs made to the heating unit, and [thus] summary judgment is appropriate" (*id.* at 7–8) is unpersuasive under the deliberate indifference framework. Even if Russell was not directly responsible for work orders or maintenance, he can still be held responsible for cell conditions if he was aware of such conditions. *See Taylor*, 880 F.2d at 1045 (holding that a supervisor may be "liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them."). Here, as discussed above, there is a genuine dispute of material fact as to Warden Russell's knowledge of Jones' cell temperature. Thus, I cannot grant summary judgment on this ground.

### B. Qualified immunity

Russell argues he is entitled to qualified immunity. *Id.* at 8. Russell conclusionary states that "this Court must conclude that Defendants were plainly incompetent or knowingly violate the law in order to deny them the benefit of qualified good faith immunity." *Id.* at 9. I disagree.

"In § 1983 actions, qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Sampson v. Cnty. of Los Angeles*, 974 F.3d 1012, 1018 (9th Cir. 2020) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). "Clearly established" means that the statutory or constitutional question was "beyond debate," such that every reasonable official would understand that what he is doing is unlawful. *See District of Columbia v. Wesby* 583 U.S. 48, 62 (2018); *Vos v. City of Newport Beach*, 892 F.3d 1024, 1035 (9th Cir. 2018). Relevant case law "does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question

beyond debate." *White v. Pauly*, 580 U.S. 73, 79 (2017) (cleaned up). The Supreme Court has repeatedly told courts not to define clearly established law at a high level of generality because such immunity "is effectively lost if a case is erroneously permitted to go to trial." *Pearson*, 555 U.S. at 231; *City and Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 613 (2015). In other words, "immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Pearson*, 555 U.S. at 231 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). In the Ninth Circuit, if a defendant affirmatively raises qualified immunity as a defense, the plaintiff bears the burden of demonstrating that both prongs are met. *Isayeva v. Sacramento Sheriff's Dep't.*, 872 F.3d 938, 946 (9th Cir. 2017). The court may evaluate the qualified immunity prongs in any order. *Felarca v. Birgeneau*, 891 F.3d 809, 815–16 (9th Cir. 2018).

Here, Russell argues he is entitled to qualified immunity because "Jones cannot show Russell was responsible for or personally involved in physical plant maintenance or work orders." ECF No. 33 at 9. Again, this narrow interpretation of the complaint fails to take into account all of the allegations set forth therein. Russell also argues that "[g]iven the dearth of work orders, grievances and complaints on this issue, Warden Russell cannot be said to have known of a potential constitutional violation, let alone an actual one regarding the climate conditions within the cell." *Id*. However, as discussed above, and as Jones highlights in his response, ECF No. 48 at 13, it appears Russell was, in fact, aware of the broken heating unit. *See, e.g.*, Davison Dep., Def.'s Ex. C, ECF No. 33-3 at 8. And Jones specifically complained to Russell about his cell temperature on more than occasion. ECF No. 48 at 13; *see, e.g.*, Davison Dep., Def.'s Ex. C, ECF No. 33-3 at 8. Finally, Russell's argument that "there is no case law that would put Warden Russell on clear notice that climate in the cell was at unconstitutional climate levels— especially given the lack of grievances, work orders, or other specific complaints regarding the temperature" is unpersuasive. I point counsel to the case law *supra*.

### C. Sovereign immunity

Russell argues that Nevada "has not consented to waive its sovereign immunity in the instant case, and to the extent Jones asserts a negligence cause of action, it should be dismissed." ECF No. 33 at 10–11. As Jones argues, ECF No. 46 at 14, the cause of action here is under the Eighth Amendment for conditions of confinement, not negligence. Consequently, this argument fails.

### IV.  Conclusion

IT IS HEREBY ORDERED that Russell's motion for summary judgment **[ECF No. 33] is DENIED**.

Dated: June 11, 2024

_____
Cristina D. Silva
United States District Judge